Diane J. Humetewa
United States Attorney
District of Arizona

Richard Patrick
Assistant U.S. Attorney
Arizona State Bar No. 05148
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona  85004-4408
Telephone:  (602) 514-7500
E-Mail Address:  Richard.Patrick@usdoj.gov

John C. Cruden
Acting Assistant Attorney General
Environment and Natural Resources Division

Donna S. Fitzgerald, Trial Attorney, CT Bar #411810
Tyler Welti, Trial Attorney, CA Bar #257993
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington D.C. 20044-0663
Telephone: (202) 305-0476
E-Mail Address:  Donna.Fitzgerald@usdoj.gov
                 Tyler.Welti@usdoj.gov

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Western Watersheds Project,<br><br>Plaintiff,<br><br>v.<br><br>Bureau of Land Management,<br><br>Defendant. | CIV-08-01472-PHX-MHM<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR RECONSIDERATION** |

## INTRODUCTION

Defendant responds to Plaintiff's Motion for Reconsideration ("Motion") as directed by the Court's February 18, 2009, Minute Order (dckt. no. 41).  Plaintiff has moved for reconsideration of the Court's February 2, 2009, Order granting Defendant's motion to dismiss. Plaintiff argues that the Court committed clear legal error in its holding on judicial reviewability and abused its discretion by dismissing the suit without allowing Plaintiff to amend its complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

again.  The Court should deny Plaintiff's Motion for Reconsideration because there is no clear

legal error in the Court's holding and Plaintiff has not been prejudiced by not being given the

opportunity to file a second amended complaint before the Court granted the motion to dismiss.

## BACKGROUND

On January 17, 2001, President Clinton issued Presidential Proclamation No. 7397 to

establish the Sonoran Desert National Monument ("SDNM").  The Proclamation, among other

things, provided that "[t]he Secretary of the Interior shall prepare a management plan that

addresses the actions . . . necessary to protect the objects identified in this Proclamation; and . . .

further, that grazing on Federal lands north of Interstate 8 shall be allowed to continue only to

the extent that the Bureau of Land Management determines that grazing is compatible with the

paramount purpose of protecting the objects identified in this proclamation."

On August 11, 2008, Plaintiff filed this action against the Bureau of Land Management

("BLM") and on October 21, 2008, filed an amended complaint raising two claims: (1)  BLM's

failure to issue both a livestock grazing determination  and a management plan as required by the

Proclamation, and (2)  BLM's reauthorization of grazing in a portion of the SDNM without first

completing the livestock grazing determination called for in the Proclamation.  Plaintiff relied

solely on the Administrative Procedure Act ("APA") for judicial review of both claims.

Defendant moved to dismiss the suit for lack of subject matter jurisdiction on two

grounds.  First, Defendant argued that Section 325 of the Department of the Interior and Related

Agencies Appropriations Act of 2004, Pub. L No. 108-108 § 325, 117 Stat. 1241, (the latest in a

series of such annual appropriations riders), effectively barred review of Plaintiff's claims.

Second, Defendant argued that actions directed by the President in the Proclamation are not

subject to judicial review under the APA.

Following argument, the Court dismissed the suit, holding that, as Defendant argued, the

alleged failures on the part of BLM to comply with the Proclamation are not subject to judicial review under the APA.  The Court went on to conclude that even if the Proclamation were subject to judicial review under the APA, Plaintiff's claims relating to the grazing compatibility determination and BLM's renewal of grazing permits are barred by Section 325.

In its motion, Plaintiff repeats arguments made in opposition to Defendant's Motion to Dismiss,[1]/ and in the process characterizes the Court's holding as addressing the question of "whether the President has discretion to include management directives within a proclamation." Pl.'s Motion 8 (dckt. no. 40).  No one has suggested that the President lacks authority to include management directives in a Proclamation and Defendant does not read the Court's opinion as suggesting otherwise.  Instead, the relevant question is whether the Proclamation's directives to complete a grazing compatibility determination and a management plan ("the directives") are privately enforceable under Section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.  Defendant reiterates that the directives, while validly included in the Proclamation, are not privately enforceable under APA § 706.  Order at 12 ("[T]he Court finds that the BLM's failure to complete a management plan or issue a grazing compatibility determination is not subject to judicial review under the [APA].").

## I.     The Court Lacks Jurisdiction Because Plaintiff has Not Identified a Waiver of Sovereign Immunity or Private Right of Action

Because neither the Antiquities Act nor the Proclamation provides a right of action or a waiver of sovereign immunity, Plaintiff's claims seeking to compel Defendant to complete the directives purport to rely upon the limited waiver of sovereign immunity and right of action in § 706(1) of the Administrative Procedure Act ("APA").  5 U.S.C. § 706(1).  Plaintiff's § 706(1)

---

[1] Plaintiff's repetition of its argument in opposition to Defendant's Motion to Dismiss that the Proclamations are enforceable under the APA and Ninth Circuit precedent is "grounds for denial of the motion [for reconsideration]." LRCiv 7.2(g) ("No motion for reconsideration of an Order may repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order.  Failure to comply with this subsection may be grounds for denial of the motion.").

1   claim "can proceed only [if] plaintiff asserts that an agency failed to take a <u>discrete</u> agency

2   action that it is <u>required to take</u>."  <u>Norton v. Southern Utah Wilderness Alliance</u>, 542 U.S. 55, 64

3   (2004) (emphasis in original).  The Court lacks jurisdiction over Plaintiff's § 706 claims because

4   Plaintiff seeks to compel Presidential action rather than a "final agency action."

5

6        **A.  Plaintiff Fails to Identify an "Agency Action" Subject to the APA**

7        The APA only allows for judicial review of "final agency action."  5 U.S.C. at § 704; <u>see</u>

8   <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 882 (1990).  An exercise of Presidential discretion

9   is not "final agency action" and is therefore not subject to judicial review under the APA.  <u>See</u>

10  D.'s Mem. Supp. M. Dismiss 12–17; D.'s R. Mem. Supp. M. Dismiss 7–9; <u>Dalton v. Specter</u>,

11  511 U.S. 462, 476–77 (1994) ("Where a statute . . . commits decisionmaking to the discretion of

12  the President, judicial review of the President's decision is not available.").

13

14       Actions taken pursuant to authority committed to Presidential discretion by law, like

15  actions taken pursuant to authority committed to Presidential discretion by the Constitution, are

16  not subjected to judicial oversight under the APA merely because the President chooses to act

17  through subordinates.  <u>Dalton v. Specter</u> and <u>Franklin v. Massachusetts</u> establish that President's

18  exercise of discretion cannot be collaterally attacked by challenging predicate agency actions.

19  <u>Dalton</u>, 511 U.S. at 476–77; <u>Franklin</u>, 505 U.S. 788, 799 (1992).  Neither are actions taken

20  pursuant to authority committed to Presidential discretion by law subject to judicial review under

21  the APA merely because the President directs an agency or subordinate to complete the action.

22  In such a case, the agency is "merely carrying out the directives of the President, and the APA

23  does not apply to Presidential action."  <u>Tulare County v. Bush</u>, 185 F. Supp. 2d 18, 28–29

24  (D.D.C 2001), <u>aff'd</u>, 306 F.3d 1138 (D.C. Cir. 2002); <u>see also</u> <u>id</u>. ("Any argument suggesting

25  that this action is agency action would suggest the absurd notion that all Presidential actions

26

27

28

must be carried out by the President him or herself in order to receive the deference Congress has chosen to give to Presidential action.").

The Ninth Circuit has held that action taken by an agency pursuant to an authority "committed to presidential discretion by law," is not subject to review under the APA:

> For the purposes of this appeal the Secretary's actions are those of the President, and therefore by the terms of the APA the approval of the regulation at issue here is not reviewable . . . .  Since presidential action in the field of foreign affairs is committed to presidential discretion by law, it follows that the APA does not apply to action of the Secretary in approving the regulation here challenged.

Jensen v. Nat'l Marine Fisheries Serv., 512 F.2d 1189, 1191 (9th Cir. 1975); see also United States v. Decker, 600 F.2d 733, 737 n.5 (9th Cir. 1979) (describing Jensen); Mountain States Legal Found. v. Bush, 306 F.3d 1132, 1135 (D.C. Cir. 2002) (limiting judicial review of the proclamations creating six monuments to ultra vires review).[2]/

In this case, the President chose to exercise his discretion under the Antiquities Act through a subordinate agency.  The actions contemplated by the directives, which inform the scope of the President's reservation under the Antiquities Act, represent a management decision made by the President, not by an agency.  The actions contemplated by the President's directives are the legal equivalent of Presidential actions and are, therefore, not subject to judicial review under the APA.  The President, not the courts, retains the ultimate authority over the directives.  See Zhang v. Slattery, 55 F.3d 732, 748 (2d Cir. 1995) ("For whatever reasons, the [agency] did not adhere to this order and the Bush Administration did not follow up on it.  However, it is not

---

[2]  Indeed, the principle that agency actions taken pursuant to discretion committed to the President by law are the legal equivalent of Presidential actions is deeply rooted.  See Wilcox v. Jackson ex dem. McConnel, 38 U.S. 498, 512–13 (U.S. 1839) (holding "the act of [an agency] in requiring this reservation to be made, [is] in legal contemplation the act of the President; and, consequently, that the reservation thus made was in legal effect, a reservation made by order of the President"); Marbury v. Madison, 5 U.S. (1 Cranch) 137, 166 (1803) (holding "their acts are his acts" and noting that where executive officers "act in cases in which the executive possesses a constitutional or legal discretion, nothing can be more perfectly clear than that their acts are only politically examinable") (emphasis added); see also Rock Island Military Reserv'n, 10 U.S. Op. Atty. Gen. 359, 362 (1862) (advising "that [specific actions taken by agencies] deriving their validity from the discretionary power vested in the President . . . must be accepted as the act of the President," at least "in the absence of any evidence of [the President's] disapproval.").

the role of the federal courts to administer the executive branch.").  In Plaintiff's own words,

"the role of the courts is not to determine whether the President abused his discretion in light of

the Antiquities Act's broad grant of discretion."  Pl.'s Motion 6.

Because Plaintiffs have failed to identify a final <u>agency</u> action subject to judicial review

under the APA, Plaintiff's Motion for Reconsideration should be denied.[3]/

**B.  <u>City of Carmel</u> Does Not Address the Issue of Whether a Particular Action to be Completed by an Agency at the Direction of the President is the Legal Equivalent of a Presidential Action**

Plaintiff continues to assert that the decision in <u>City of Carmel-By-The-Sea v. U.S.</u>

<u>Department  of Transportation</u> contradicts the proposition that agency action directed by the

Proclamation is itself Presidential action.  However, <u>City of Carmel</u> does not address this issue.

123 F.3d 1142, 1166 (9th Cir. 1997).

The issue in <u>City of Carmel</u> was whether a decision by the Federal Highway

Administration to realign a state highway, which was made pursuant to a statute that confers

decisionmaking authority to agencies, could be reviewed under the APA <u>for compliance with</u>

Executive Orders governing agency actions in floodplains and wetlands.  The court found that,

"[u]nder certain circumstances, Executive Orders, with specific statutory foundation, are treated

as agency action and reviewed under the [APA]."  <u>Id</u>. at 1166.  The crucial distinction is that in

<u>City of Carmel</u>, the reviewed actions were not taken solely pursuant to the Executive Orders;

rather, specific final agency actions taken pursuant to the agency's separate statutory authority

were subjected to judicial review for compliance with the Presidential orders.  In this case, in

contrast, the actions that Plaintiff challenges are actions taken (or not taken) pursuant to

---

[3]   Defendant again clarifies that final actions taken by agencies pursuant to the Federal Land and Policy Management Act, 43 U.S.C. § 1700 et seq., ("FLPMA") or other statutes that confer authority on agencies are agency actions that may be subject to judicial review under the APA.  <u>See</u> D.'s Mem. Supp. M. Dismiss 13 n.6. But, in this case, Plaintiff has not relied on FLPMA and does not have a viable FLPMA claim.  <u>See infra</u> at 8–9.

directives in the Proclamation itself, and not separate statutory authority.  Such actions do not fall within the ambit of judicial review authorized under City of Carmel.

Plaintiff further attempts to convert City of Carmel's "specific statutory foundation" requirement into a standard that does not require any specific foundation in a statute.  Pl.'s Motion 8.  Plaintiff cites to lines of cases that do not even purport to address the distinction between Presidential and agency action.  For example, Plaintiff cites to Nat'l Med. Enter., Inc. v. Sullivan,  which addressed the question of "whether [promulgation of a] regulation exceeded the Secretary's statutory authority."  957 F.2d 664, 667 (9th Cir. 1992).  Likewise, City of Albuquerque v. U.S. Department of Interior not only does not control here but applies a different test than the Ninth Circuit, that draws on nondelegation doctrine principles.  379 F.3d 901, 914–15 (10th Cir. 2004).  These nondelegation and ultra vires doctrine cases simply have nothing to do with the question of whether an Executive Order is privately enforceable against agencies under the APA, and Plaintiff fails to explain otherwise.  As this Court found, the specific statutory foundation requirement has not been met here.

Importantly, the lack of a specific statutory foundation does not mean that the directives in the Proclamation are invalid, ultra vires, or in violation of the nondelegation doctrine, nor has any party in the case made such an argument.  To the contrary, these directives are a valid exercise of the President's broad discretion under the Antiquities Act.  Defendant thus agrees with Plaintiff's statement that the directives are valid and "authorized by the Antiquities Act." Pl.'s Motion at 3–4.  Indeed, the directives are also authorized by the President's constitutional power to see that laws are faithfully executed.  U.S. CONST. art. II, § 3; see, e.g., Utah Ass'n of Counties, 316 F. Supp. 2d at 1184 (D. Utah 2004) ("Use of executive orders may be employed by President in carrying out his constitutional obligation to see that laws are faithfully executed and to delegate certain of his duties to other executive branch officials, but executive order

cannot impose legal requirements on executive branch that are inconsistent with express will of Congress."); see also Myers v. United States, 272 U.S. 52, 135 (1926).

Contrary to Plaintiff's suggestion, the Court's finding that the directives are not subject to judicial review does not imply that the directives are somehow invalid. Rather, the finding means that the directives are enforceable within the executive branch and not through lawsuits brought by private parties.

## II.    Plaintiff Should not Be Allowed to Amend its Complaint Again

Finally, Plaintiff argues that the Court abused its discretion by not "giving WWP an opportunity to amend its complaint to raise other statutory claims." Pl.'s Motion 15–16.  The Court's dismissal of this case without providing Plaintiff the opportunity to amend the complaint a second time is justified in light of the manner in which the case has proceeded.  In the six months that this case has been pending, Plaintiff amended its complaint once to add an additional claim, and very soon after filing the amended complaint filed a lengthy motion for summary judgment seeking a speedy ruling on the merits of its claims.  At no time did Plaintiff attempt to assert the FLPMA claims it now suggests that it would raise if allowed to amend.  Plaintiff consciously decided which claims to pursue, and it cannot reasonably claim to be prejudiced by the Court's dismissal, months after the original complaint was filed, without leave to amend.[4]

Regardless, Plaintiff should not be granted leave to amend to raise FLPMA claims because Section 325 would bar such claims in the same manner that Defendant argued that provision bars the claims asserted in the First Amended Complaint.  Thus, any amendment would be futile.  See Flowers v. First Hawaiian Bank, 295 F.3d 966, 976 (9th Cir.2002) ("A district court . . . does not abuse its discretion in denying leave to amend where amendment would be futile.").   First, Plaintiff suggests that it would raise claims that Defendant has failed to

---

[4]      In fact, Plaintiff never moved to amend its Complaint a third time, and instead seems to suggest that the Court should have invited Plaintiff to amend before it issued its ruling.

1  issue a management plan as required by FLPMA, 43 U.S.C. § 1712(a).  Pl.'s Motion 15–16.

2  Plaintiff cannot challenge the failure of the Secretary to complete a management plan under

3  FLPMA because, as Defendant explained in its motion to dismiss, Section 325 leaves the timing

4  and completion of environmental analysis for grazing allotments to the Secretary's "sole

5  discretion."  D.'s Mem. Supp. M. Dismiss 4.[5]/[6]/

6

7        Second, Plaintiff suggests that it would raise claims that Defendant's renewal of grazing

8  permits and continued allowance "of grazing on the Monument without conducting a grazing

9  compatibility determination and in the face of evidence that grazing is harming the plant and

10  animal resources on the monument" violates FLPMA's general requirement that BLM "take any

11  action necessary to prevent unnecessary or undue degradation of the lands."  Pl.'s Motion 15–16

12  (quoting 43 U.S.C § 1732(b)).  Plaintiff's second suggested FLPMA claim repeats Plaintiff's

13  existing claim seeking to set aside grazing permits that Defendant renewed as mandated by a

14  Congressional appropriations rider.  See Pub. L. No. 108-108 § 325, 117 Stat. at 1307–08.  As

15  the Court has determined, such claims fail in light of Section 325.  Order at 15–16 ("Section 325

16  bars WWP's claims relating to the BLM's renewal and processing of grazing permits on the

17  Sonoran Desert National Monument.").

18  **CONCLUSION**

19        For these reasons, Plaintiff's motion for reconsideration should be denied.

20

21

22

23

24  Respectfully submitted this 13th day of March, 2009.

25

26  [5]/      While a management plan issued under FLPMA is not limited to grazing, Plaintiff's case to date has only
alleged injuries from grazing, see D.'s R. Mem. Supp. M. Dismiss 6–7, and Plaintiff's motion for reconsideration

27  fails to identify any other injuries or complaints except as they relate to grazing on the SDNM.

     [6]/      Moreover, as BLM's counsel noted at oral argument, BLM already has a management plan in place, and

28  is currently amending it to account for the Proclamation.  See D.'s Reply Mem. Supp. M. Dismiss 2–3 (discussing
BLM's plans to update its management plan).

1

2          DIANE J. HUMETEWA
           United States Attorney
3          District of Arizona

4          RICHARD G. PATRICK
           Assistant U.S. Attorney
5

6          JOHN C. CRUDEN
           Acting Assistant Attorney General
7

8          DONNA S. FITZGERALD
           Trial Attorney
9
            */s/ Tyler Welti*
10         TYLER WELTI
           Trial Attorney, California Bar No. 257993
11         United States Department of Justice
           Environment and Natural Resources Division
12         Natural Resources Section
           P.O. Box 663
13         Washington D.C. 20044-0663
           Telephone: (202) 305-0481
14         Fax:  (202) 305-0506
           E-Mail Address:  Tyler.Welti@usdoj.gov
15

16    Of Counsel:

17
      JOHN GAUDIO
18    U.S. Department of the Interior
      Office of the Solicitor
19    Phoenix, AZ

20

21

22

23

24

25

26

27

28